# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GENUFOOD ENERGY ENZYMES CORP., a Nevada corporation,

    Plaintiff,

vs.

TAIWAN CELL ENERGY ENZYMES CORPORATION, a private limited company organized under the laws of the Republic of China,

    Defendant.

2:13-cv-00435-RCJ-CWH

ORDER

This case arises out of an alleged breach of contract. Plaintiff has moved for a preliminary injunction (ECF No. 6) and for the entry of default judgment in the amount of $17,875,465.50 (ECF No. 13). Plaintiff also seeks an award of costs in the amount of $477.50. On April 24, 2013, the Clerk of the Court entered default against Defendant for its failure to defend this action. (ECF No. 11). For the reasons stated herein, the motion for preliminary injunction is denied, and the motion for entry of default judgment is granted in part and denied in part. Plaintiff is entitled to a default judgment in the amount of $150,170.50 and an award of costs in the requested amount.

**I.    FACTS AND PROCEDURAL HISTORY**

On October 11, 2010, Plaintiff Genufood Energy Enzymes Corporation ("Plaintiff" or "GEEC") and Defendant Taiwan Cell Energy Enzymes Corporation ("Defendant" or "TCEEC") entered into a Sole Distributorship and Private Placement Agreement (the "Agreement").

(Compl., ECF No. 1, at 2). The Agreement provided for Defendant's investment in GEEC through the purchase of 125 million shares of GEEC common stock, at a price of $0.008 per share, for a total cost of $1 million. (*Id.*). Under the Agreement, Defendant was to pay the $1 million in five installments of $200,000, with a payment due every two months. (Agreement § 13.2.2.2, ECF No. 1, at 12). The Agreement also includes a liquidated damages provision, which states that in the event of a default in a payment, Plaintiff has the right, in its sole discretion, to revise the price per share owed by Defendant on the stock purchase. (*Id.* § 13.3.4.2).

Plaintiff issued shares only after receiving a corresponding payment. (*Id.* § 13.4). The first payment was due on October 10, 2010, at the signing of the Agreement. (*Id*. § 13.2.2). The final payment on the $800,000 balance was due by June 15, 2011. (*Id*. § 13.2.2.2). Defendant timely made the first two payments, but each of the subsequent payments was either late or incomplete. (Compl., ECF No. 1, at 2). Defendant did not satisfy the balance of its 1 million dollar obligation until August 17, 2011 (Demand Letter, ECF No. 1, at 22). Shares were issued in an amount proportionate to each payment. (*Id.*). Plaintiff issued the last of the 125 million shares in conjunction with Defendant's final payment. (*Id.*). Despite Defendant's sporadic and incomplete payments, Plaintiff never asserted default. (*See generally id.*).

In January 2011, Plaintiff held an initial public offering at a price of $0.30 per share. (*Id.*; Compl., ECF No. 1, at 2). Two years later, on February 9, 2013, Plaintiff made a written demand on Defendant in the amount of $17,875,465.50, alleging breach of the Agreement and purporting to assert its rights under the liquidated damages provision. (Demand Letter, ECF No. 1, at 21). On March 14, 2013, after Defendant failed to respond, Plaintiff filed its compliant in this Court, asserting a single claim for breach of contract. Specifically, Plaintiff contends that Defendant's

failure to timely remit the required payments triggered the liquidated damages provision, entitling Plaintiff to damages in the amount of $17,875,465.50. (Compl., ECF No. 1, at 2). Relying on the liquidated damages provision, Plaintiff reached this figure by multiplying the number of shares issued in conjunction with untimely payments by a revised price of $0.25 per share. (*Id.*; *see also* Demand Letter, ECF No. 1, at 22). Defendant has not responded or otherwise defended this action. (*See generally* Docket).

On March 25, 2013, Plaintiff's counsel learned that Defendant attempted to transfer 884,167 shares of GEEC stock as a "gift." On March 27, 2013, Plaintiff's counsel notified Defendant, via email, that Plaintiff would seek a restraining order to preserve the status quo unless Defendant voluntarily rescinded its attempted transfer within 24 hours. (Hsu Email, ECF No. 6, at 14). Defendant did not respond. (Mot. for Prelim. Inj., ECF No. 6, at 2). The following day, Plaintiff filed an ex parte motion for a temporary restraining order, (ECF No. 5), and the pending motion for preliminary injunction, (ECF No. 6). On April 5, 2013, the Court denied the ex parte motion and scheduled a hearing on the motion for preliminary injunction. (Order, ECF No.7). During the hearing, Plaintiff asked the Court to deny its motion for preliminary injunction, (Hr'g, Apr. 18, 2013, Las Vegas Courtroom 4B, at 12:37 pm), and the Court indicated that it would do so in a written order. Defendant did not attend the hearing or otherwise defend. On April 24, 2013, the Clerk of the Court entered default against Defendant for its failure to defend this action. (ECF No. 11). On May 17, 2013, Plaintiff filed its pending motion for default judgment (ECF No. 13). The Court now considers the pending motions.

## II. PRELIMINARY INJUNCTION

On April 18, 2013, the Court heard oral argument on Plaintiff's unopposed motion for preliminary injunction. (ECF No. 6). During the hearing, the Court expressed serious doubts concerning the likelihood of success on the merits, and Plaintiff responded by asking the Court to deny the motion without prejudice. (Hr'g, Apr. 18, 2013, Las Vegas Courtroom 4B, at 12:37 pm). The Court indicated that it would do so. (*Id.*). The motion for preliminary injunction (ECF No. 6) is therefore denied without prejudice.

## III. DEFAULT JUDGMENT

### a. Legal Standard

Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). The party seeking default judgment must then petition the court for a default judgment. *Id.* at 55(b)(2). "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6)

4

whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (*citing Eitel*, 782 F.2d at 1471–72). After entry of default, well-pled allegations in the complaint regarding liability are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The plaintiff is required to prove all damages sought in the complaint, and those damages may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). If sufficiently documented and detailed, damages claims may be fixed by an accounting, declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

**b. Analysis**

The first three *Eitel* factors weigh towards the entry of default judgment, but only slightly. As an initial matter, the Court recognizes that Plaintiff arguably has a meritorious breach of contract claim,[1] which it has adequately pled, and that the denial of the instant motion would prejudice Plaintiff by leaving it without a remedy. However, the amount to which Plaintiff would be prejudiced is significantly lower than the amount of damages presently claimed.

Relying on an unenforceable liquidated damages provision (the "Provision"), Plaintiff claims that it is entitled to $17,875,465.50 in damages. This is incorrect. According to the Provision, in the event of a default payment, Plaintiff is entitled to "[r]evise the price per share

---

[1] At the hearing on the motion for preliminary injunction, the Court expressed concerns about a perceived waiver of default resulting from Plaintiff's acceptance of late payments, issuance of the corresponding shares, and delayed efforts to enforce its rights. Plaintiff has resolved these concerns, citing an anti-waiver clause in the Agreement, which provides that "[t]he failure of either party to enforce at anytime [*sic*] or for any period any one or more of the terms or conditions of this Agreement shall not be a waiver of them or of the right at any time subsequently to enforce all terms and conditions of this Agreement." (Mot. for Default, ECF No. 13, at 4 (citing Agreement § 21.2, ECF No. 13, at 22).

5

which price revision shall be *at the sole discretion* of [Plaintiff] and forthwith determine a new subscription payment date to be performed by the [Defendant]." (Agreement § 13.3.4.2, ECF No. 1, at 12) (emphasis added). This unfettered grant of discretion amounts to a penalty, and it is plainly unenforceable.

Under Nevada law, liquidated damages are "the sum which a party to a contract agrees to pay if he fails to perform, and which, having been arrived at *by a good faith effort to estimate the actual damages that will probably ensue from a breach*, is recoverable as agreed-upon damages should a breach occur." *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993) (citing *Joseph F. Sanson Investment v. 268 Limited*, 795 P.2d 493, 496–97 (Nev. 1990)) (emphasis added). They are appropriate as an amount of fixed damages when "contractual damages are uncertain or immeasurable." *Khan v. Bakhsh*, 306 P.3d 411, 414 (Nev. 2013) (citing *Joseph F. Sanson Investment*, 795 P.2d at 496–97).

Liquidated damages provisions are, generally, prima facie valid. *Haromy v. Sawyer*, 654 P.2d 1022, 1023 (Nev. 1982). In certain circumstances, however, such provisions rise to the level of unenforceable penalties:

> As distinguished from liquidated damages, the term "penalty," as used in contract law, is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of non-performance, and it involves the idea of punishment . . . . [The] distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages is the sum to be paid in the event of non-performance.

*Mason*, 865 P.2d at 335 (quoting 22 Am.Jur.2d, Damages § 684 (1980)) (alteration in original).

"[T]o prove that such a provision constitutes a penalty, the challenging party must persuade the

court that the liquidated damages are disproportionate to the actual damages sustained by the injured party." *Id.*

Where a liquidated damages figure is fixed or accruing by a static factor, the comparison of liquidated damages to actual damages is primarily a mathematical endeavor. The liquidated damages figure in the disputed provision is compared to the actual damages. *See, e.g.*, *Haromy*, 654 P.2d at 1023–24 (comparing a liquidated damages figure to actual damages). If the actual damages are considerably smaller than the stipulated liquidated damages, this may be sufficient to show that the liquidated damages actually represent an unenforceable penalty. *See Silver Dollar Club v. Cosgriff Neon Co.*, 389 P.2d 923, 925 (Nev. 1964).

In addressing the instant motion, the Court recognizes that in contested cases the Defendant would normally bear the burden of proving the Provision invalid. However, in the context of a motion for default judgment, where *Eitel* requires the Court to consider, among other things, the merits of Plaintiff's substantive claim, the sufficiency of the complaint, and the sum of money at stake, the Court must address the Provision's viability. Here, because the Court concludes that Defendant could have easily invalidated the Provision, it cannot serve as the basis for calculating Plaintiff's damages.

The Provision fails for at least three reasons: First, by its own terms, it is not "a good faith effort to estimate the actual damages that will probably ensue from a breach." *Mason*, 865 P.2d at 335. In fact, it is not an estimate at all. Instead, it gives Plaintiff "sole discretion" to revise the price per share, and thus unilaterally dictate the amount of damages owed, in the event of a breach. This is not an approximation of actual damages; it is an attempt to provide Plaintiff with contractual authority to severely penalize Defendant. Without a good faith estimate of

actual damages, the Provision lacks the fundamental characteristic of an enforceable liquidated damages clause, and it is therefore stricken.

Second, and for nearly identical reasons, the Provision amounts to an unenforceable penalty. Were it enforced, this purely discretionary non-estimate would allow Plaintiff to extract liquidated damages vastly disproportionate to the amount of actual damages suffered. This is exemplified by the facts in the present case: Here, Defendant originally owed, and eventually paid, $1 million but the final $600,000 was delayed by a total of two months and three days. Nonetheless, Plaintiff accepted each of the late payments by issuing the corresponding shares. Under these circumstances, treating the Provision as anything other than a penalty would require concluding that the $17,875,465.50 presently sought is roughly proportionate to the actual damages caused by the delay. This is inconceivable, and the Court will make no such finding.

Third, as Plaintiff demonstrates in the instant motion, the actual damages in this case were neither uncertain nor immeasurable. (*See* Mot. for Default, ECF No. 13, at 6–7). Therefore, liquidated damages are inappropriate. *Khan*, 306 P.3d at 414 ("[W]e conclude that the district court erred in awarding liquidated damages to Bakhsh because actual damages were ascertainable . . . ."). In this case, Plaintiff's actual damages were, and still are, ascertainable. Indeed, the amount to which Plaintiff has been damaged can be proven sum-certain: It is simply the fair market value of the shares issued at the time of each late payment minus the price Defendant actually paid for those shares. *Stearns' Props. v. Trans-World Holding Corp.*, 492 F. Supp. 238, 243 (D. Nev. 1980) (Under Nevada law, "[i]n the determination of the amount of damages recoverable by reason of breach of contract, the law attempts to place the nondefaulting party in the position it would have occupied had the contract been performed."); *cf. Hanneman v.*

8

*Downer*, 871 P.2d 279, 283 (Nev. 1994) ("'Out-of-pocket'" damages are measured by the difference between the amount paid by the aggrieved party and the actual value of that which was received.).

Accordingly, the appropriate measure of damages in this case is the difference between the price actually paid and the fair market value of the issued shares at the time of each late payment. Plaintiff has proven that at the time of each of Defendant's defaults, the issued shares had a fair market value of $0.01 per share. (Lin Decl., ECF No. 14, at 2). Defendant's late payments correspond to the issuance of 75 million shares. (*Id.*). Thus, the fair market value of the shares issued in conjunction with late payments is $750,000 ($0.01 per share multiplied by 75 million shares). Defendant's late payments equal $600,000, which must be reduced by $170.50 for wire charges attributable to Defendant, (*Id.*), for a total of $599,829.50. Therefore, Plaintiff is entitled to actual damages in the amount of $150,170.50 ($750,000 minus $599,829.50).

The remaining *Eitel* factors also favor default judgment. With respect to the sum of money at stake, the Court's reduction of available damages leaves Defendant owing an amount directly related to the harm caused. Therefore, "because the court must consider the amount of money at stake in relation to the seriousness of [the d]efendants' conduct," *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002), this factor points towards the entry of default judgment. Next, because the material facts can be easily verified with reference to the documents submitted, it is unlikely that they could be reasonably disputed. It is also unlikely that the default was the result of excusable neglect. This action was filed over nine months ago, and Defendant has been properly served with each of Plaintiff's filings. Plaintiff has also made a formal written demand regarding the underlying obligation. Thus, Defendant is

presumably aware of its outstanding obligations and is on fair notice of the instant action to enforce them.

Finally, although federal policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, the mere existence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Moreover, Defendants' failure to answer the instant complaint renders a decision on the merits impossible. Under Federal Rule 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* Accordingly, considering each of the *Eitel* factors, the Court finds that the entry of default judgment is warranted.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for entry of default judgment (ECF No. 13) is GRANTED in part and DENIED in part. Plaintiff is entitled to a default judgment in the amount of $150,170.50. Plaintiff is also entitled to an award of costs in the amount of $477.50.

IT IS FURTHER ORDERED that Plaintiff's motion for preliminary injunction (ECF No. 6) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:  February 14, 2014

_____
ROBERT C. JONES
United States District Judge